STATE EX REL. FLOYD ET AL., RELATORS, *v.* DISTRICT COURT ET AL., RESPONDENTS.

(No. 2,857.)

(Submitted April 19, 1910. Decided June 7, 1910.)

[109 Pac. 438.]

*Inheritance Taxes—Estates of Nonresident Decedents—Constitution—Statutory Construction—Effect of Amendments—Probate Proceedings—Powers of District Courts.*

Estates—Nonresident Decedents—Inheritance Taxes.
    1. *Held,* that where administration of the estate of a nonresident testator is ancillary only, and in order to distribute it under the terms of the will it is necessary that it be delivered to the executor in the jurisdiction in which the decedent resided at the time of his death, the inheritance tax provided for by section 7724, Revised Codes, must be collected upon the amount so delivered.

Statutory Construction—Effect of Amendments.
    2. Where, at the time of the enactment of a statute, the Codes contained a provision touching the same subject, the later legislation must be construed as controlling in so far as it is inconsistent with the earlier enactment.

Probate Proceedings—Powers of District Courts.
    3. District courts, when sitting in probate, have no other powers than those expressly conferred by statute; their proceedings are regulated thereby and are *in rem.*

(357)

Statutory Construction—Constitutionality.
    4. If possible, a statute must be so construed as to uphold its con-
stitutionality.

Inheritance Taxes—Statute—Constitutionality.
    5. *Held,* that the statute providing for an inheritance tax (sections
7724–7751) is not unconstitutional on the alleged ground that it fails
to provide for notice to nonresident distributees of the appraisement of
the estate for the purpose of fixing the tax, but that under sections
7738 and 7741, such a reasonable notice is provided, and an oppor-
tunity to be heard given, as not to leave the legislation open to the
objection that it fails to provide due process of law.

ORIGINAL application for writ of *certiorari,* by the state, on
the relation of John Floyd and another, to review an order of
the District Court of the Second Judicial District in and for the
County of Silver Bow. Writ quashed, and proceedings dis-
missed.

*Mr. E. B. Howell* submitted a brief in behalf of Relators, and
argued the cause orally.

*Mr. Albert J. Galen,* Attorney General, and *Mr. W. L.
Murphy,* Assistant Attorney General, appeared in behalf of
Respondents. *Mr. Murphy* argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of
the court.

*Certiorari* to the district court of Silver Bow county. On
March 12, 1909, Charles Whiteside died testate at Ballama-
conaghy, county of Down, Ireland, the place of his residence.
His estate consists of real and personal property, a portion of
which is situated in Ireland and the remainder in Silver Bow
county, Montana. The part of the estate in Silver Bow county
is approximately of the value of $15,000. The will was duly
admitted to probate by order of the High Court of Justice
(Probate), King's Bench Division, District Registry of Belfast,
on May 13, 1909. On June 9, 1909, a copy of the will and pro-
bate thereof, duly authenticated, was filed in the district court
of Silver Bow county by the relators, both being named as exec-
utors and legatees, with a petition asking that it be admitted
to probate; and it was thereafter, on June 19, 1909, duly ad-

·mitted to probate.  The relators were appointed executors, and, having qualified, entered upon the discharge of their' duties and have continued therein.  On the day the will was admitted ·to probate, the Honorable Michael Donlan, the judge of said ·court before whom the administration of the estate is pending, for the purpose of ascertaining and fixing the amount of inheritance tax assumed to be due and payable from the estate under ·the statute, and of his own motion, appointed one R. P. O'Brien to appraise the same and make report of his appraisement. Thereupon the said O'Brien qualified as such appraiser, and is now proceeding to make his appraisement and report.  After setting forth the foregoing, the relators allege in their affidavit that the statute providing for an inheritance tax relates to ·estates which are to be distributed within the state of Montana, and provides for a tax upon distributive shares in such estates only; that the estate of Charles Whiteside cannot be distributed in the state of Montana, because the shares of the legatees named in the will cannot' be determined by the respondent court or its judge; and hence that the order appointing O'Brien is void as in excess of jurisdiction.  This court is asked to annul it. The application is by the relators as executors and also in their own right as legatees.  The attorney general has interposed a motion to quash the writ and dismiss the proceedings, upon the ground that it appears from the facts stated in the affidavit that the relators are not entitled to the relief sought.

Counsel has submitted two questions for decision: (1) Whether, when administration in this state is ancillary only, ·and, in order to distribute the estate under the terms˙ of the will, it is necessary that the portion thereof in this state be delivered to the executor or administrator in the jurisdiction in which the decedent resided at the time of his death, the tax must be collected upon the amount so delivered; and (2) whether the statute provides a means by which the tax may be ·ascertained and collected.

The will designates the executors also as trustees, and empowers them at their discretion "to sell, call in and convert"

all the property of the estate into money, and after paying out of the proceeds the funeral expenses, debts, etc., to pay specific legacies enumerated, and then to distribute the residue, if any, among all the legatees named "ratably in proportion" to the amount of their respective legacies. The legatees are widely scattered, some residing in Ireland, others in Australia, and still others in the United States. Some of them are not mentioned by name, but are designated as servants who at the time of Whiteside's death had been in his service for a period of not less than one year. Each of these is to receive £25, and such of them as had served more than one year are to receive double this sum. Two of the other legatees are mentioned, respectively, as "nephew" and "niece" of the testator, but the relation of the rest is not mentioned.

It is not questioned that, if Whiteside had been a resident of this state, the tax would have been proper. The relators contend, however, that since the amounts to be paid to each of the legatees cannot be ascertained by the court of Silver Bow county and distribution made, according to the terms of the will, of the portion of the estate within its jurisdiction, the only power the court has over it is to order it to be converted into money and delivered to the executors in Ireland, under the direction of section 7675, Revised Codes. This section provides: "Upon application for distribution, after final settlement of the accounts of administration, if the decedent was a nonresident of this state, leaving a will which has been duly proved or allowed in the state of his residence, and an authenticated copy thereof has been admitted to probate in this state, and it is necessary, in order that the estate, or any part thereof, may be distributed according to the will, that the estate in this state should be delivered to the executor or administrator in the state or place of his residence, the court or judge may order such delivery to be made, and, if necessary, order a sale of the real estate, and a like delivery of the proceeds. The delivery, in accordance with the order of the court or judge, is a full discharge of the executor or administrator with the will annexed, in this state, in relation

to all property embraced in such order, which, unless reversed on appeal, binds and concludes all parties in interest. Sales of real estate, ordered by virtue of this section, must be made in the same manner as other sales of real estate of decedents by order of the court or judge." The argument is that the word "may," as used in conferring power upon the court, should be read "must"; that the provision is therefore to be regarded as mandatory; that, in order to collect the tax, the court must have jurisdiction of the distribution; and that, since this mandatory direction necessarily deprives it of this power, it takes away the power to collect the tax also. We are not required to determine whether this provision is mandatory or not. For present purposes, it may be conceded that it is, and that the state court, in every case falling within it, must deliver and not distribute the portion of the estate over which it has control. Even so, the delivery is merely a substitute for formal distribution, and cannot impair the power of the court to do anything which it may do before it surrenders its control. Whether the tax must or must not be collected is therefore to be determined by the answer to the question: Does the statute (Revised Codes, secs. 7724–7751) require it, and provide a legal mode for its collection?

Section 7724 provides: "After the passage of this Act, all property which shall pass by will or by the intestate laws of this state, from any person who may die, seised or possessed of the same, while a resident of this state, or if such decedent was not a resident of this state, at the time of his death, which property or any part thereof, shall be within this state, or any interest therein or income therefrom, which shall be transferred by deed, grant, sale or gift made in contemplation of the death of the grantor or bargainor, or intended to take effect in possession or enjoyment after such death to any person or persons, or to any body politic, corporate, in trust or otherwise, or any property, which shall be in this state or the proceeds of all property outside of this state, which may come into this state, and which may be or should be distributed in this state to any such heirs,

devisees or legatees, by reason whereof any person or corporation shall become beneficially entitled in possession or expectancy, to any such property, or to the income thereof, other than to or for the use of his or her lawful issue, brother, sister, the wife or widow of the son, or the husband of a daughter, or any child or children adopted as such in conformity with the laws of the state of Montana, and any lineal descendant of such decedent born in lawful wedlock, shall be and is subject to a tax of five dollars on every hundred dollars of the market value of such property, and at a proportionate rate for any less amount, to be paid to the treasurer of the proper county hereinafter defined for the use of said county and state in the proportions hereafter stated; and all administrators, executors and trustees shall be liable for any and all such taxes until the same have been paid as hereinafter directed. When the beneficial interests to any personal property or income therefrom shall pass to or for the use of any father, mother, husband, wife, child, brother, sister, wife or widow of the son, or the husband of a daughter, or any child or children adopted as such in conformity with the laws of the state of Montana, or to any person to whom the deceased, for not less than ten years prior to death, stood in mutually acknowledged relation of a parent, or to any lineal descendant born in lawful wedlock; in every such case the rate of tax shall be one dollar on every hundred dollars of the clear market value of such property, and at and after the same rate for every less amount; provided that an estate which may be valued at a less sum than seventy-five hundred dollars shall not be subject to any such tax or duty. In all other cases the rate shall be five dollars on each and every hundred dollars of the clear market value of all property and at the same rate for any amount, provided, that an estate which may be valued at a less sum than five hundred dollars shall not be subject to any such duties or tax; provided further, that said tax shall be levied and collected upon the increase of all property arising between the date of death and the date of the decree of distribution, and upon all estates which have been probated before, and shall be

distributed after the passage and taking effect of this Act.''
This provision is ambiguous and somewhat uncertain in its ap-
plication. It was analyzed and construed by this court in *Hinds*
v. *Wilcox*, 22 Mont. 4, 55 Pac. 355. It is clear that the inten-
tion of the legislature in enacting it was, that the tax must be
paid whenever any property passes to those who take by testa-
mentary disposition in any form or under the laws of succession,
except in case of real estate passing directly to the father, mother,
husband, wife, brother, sister, or any of the favored class, and
except when exemptions are specifically mentioned. (*Hinds* v.
*Wilcox, supra; In re Tuohy's Estate*, 35 Mont. 431, 90 Pac. 170.)
Subject to the exceptions mentioned, it applies to all property
of every kind, passing by testamentary disposition or succession
under the laws of this state, whether the owner was at his death
a resident of this state or not; for the express provision is:
''After the passage of this Act, all property which shall pass
by will or by the intestate laws of this state, from any person
who may die, seised or possessed of the same, while a resident of
this state, or if such decedent was not a resident of this state
at the time of his death, which property or any part thereof,
shall be within this state  *  *  *  shall be and is subject to
a tax,'' etc. By this express provision the tax is imposed in case
of nonresident, as well as resident, decedents; and the measure
of it is the clear market value, or, what is the same thing, the
money value of the property passing by testamentary disposi-
tion or succession, as the case may be. And since the estate
under consideration is of a value in excess of $7,500, and all the
legatees must be paid in money, none of the exemptions apply.
Hence the whole of the estate is subject to the tax. It may be
that, when the time comes to fix the amount to be paid, a part
of it will have to be fixed at one rate and a part at another,
according as the relationship of the legatees to the testator is
made to appear. Such a proportion of the amount as will go
to the favored class, if any of the legatees fall within that class,
will be subject to the tax at the lower rate, and the rest at the

higher rate; but these proportions will be easily ascertainable when the facts appear.

The payment of the tax is in no wise dependent upon the distribution of the estate, nor upon the amount of the specific legacies or distributive shares. It is due and payable upon the value of the estate, at the death of the decedent, and, though the executor or administrator is granted some indulgence as to the time within which payment must be made, if he delays beyond the time fixed, the estate must pay interest for the delay, and he must give bond for the payment with personal security. (Revised Codes, sec. 7727.)    Therefore, while under the requirement contained in section 7675, *supra,* the power to order distribution according to the terms of the will may be assumed to have been taken from the state court, and it must, when the estate is ready for distribution, order its delivery to the executor or administrator having charge of the administration in the jurisdiction of the decedent's residence, this does not relieve the estate from the burden of the tax, nor impair the power of the court to collect it. (Revised Codes, sec. 7740.)    Even if that section should originally have been construed as counsel contend, it must be borne in mind that it was a part of the Codes at the time the statute providing for a tax upon inheritances was enacted, and it must now be construed as not controlling, but as subordinate to the subsequent legislation, so far as the latter is inconsistent with it.

Passing to the consideration of the second question, we notice, first, that in sections 7725 and 7727 there is an implication that the basis or measure for computing the amount of the tax is the value of the estate as it is made to appear by the appraisement of it in the ordinary way. (Revised Codes, sec. 7493 *et seq.*) This is not exclusive, however. Section 7729 is an additional provision. It was evidently intended to apply to cases where there has been delay in payment and there is uncertainty as to the value of the property and hence as to the amount of the tax, due to appreciation, or to the character of the interest which passes to the beneficiary, such as future contingent interests or

incomes from them, referred to in section 7725. When this condition has arisen, the court may proceed under the latter section, as was done in the case of *In re Tuohy's Estate, supra,* to ascertain the increase in value which has accrued between the date of the death of testator and the date of the decree of distribution. It was intended to apply, also, in any case and at any time when, in the opinion of the court, circumstances require an appraisement to be made; for an appraisement may be had "as often and whenever occasion may require."

But it is said by counsel for relators that the tax is imposed, not upon the property which passes to the legatee or successor, but upon the right or privilege to take; that the court must, therefore, have jurisdiction not only of the distribution, but also of the distributees in order to levy the tax; and that, since neither of these essentials exists, there can be no lawful levy of the tax in this case. In other words, in order to levy and collect the tax, the court must not only have jurisdiction of the property, but must also have the power to ascertain each distributive share, and have before it, by legal notice, all distributees, else the distributees are deprived of their property without due process of law, within the prohibition contained in the fourteenth amendment to the Constitution of the United States. What we have said of section 7675, *supra,* sufficiently indicates our view of its purpose. The delivery provided for by it, when the property is ready for distribution, serves all the purposes of distribution, and the power to direct the delivery is tantamount to the power to order distribution directly to the persons entitled to take.

But counsel say there is no effective method provided for giving notice to the distributees, and hence the statute is invalid as a whole, at least in so far as it affects the nonresident distributees. Counsel puts the query: "How, for instance, can the appraiser give the notice required by law to the unnamed servants of the deceased who are to share in the estate?" The jurisdiction of the district court, when sitting in probate, is statutory (*Davidson* v. *Wampler,* 29 Mont. 61, 74 Pac. 82), and its proceedings are regulated by statute and are *in rem* (*State ex*

*rel. Ruef* v. *District Court*, 34 Mont. 96, 115 Am. St. Rep. 510, 85 Pac. 866, 6 L. R. A., n. s., 617, 9 Ann. Cas. 418; 18 Cyc. 64) ; and, while it must be conceded that all persons who are interested in the disposition of estates are entitled to some kind of notice of proceedings which affect their interests, and to a hearing or an opportunity to be heard (*In re Davis' Estate*, 35 Mont. 273, 88 Pac. 957), if the statute provides for reasonable notice and an opportunity to be heard, it is not open to the objection that it does not provide due process of law.

Section 7738 provides: ''When the value of an inheritance, devise, bequest, or other interest subject to the payment of said tax is uncertain, the district court in which the probate proceedings are pending, or the judge thereof on his own motion, or on the application of any interested party shall appoint some competent person as appraiser, as often as, and whenever occasion may require, whose duty it shall be forthwith to give such notice, by registered mail, to all persons known to have or claim any interest in such property, and to such persons as the court may direct, of the time and place at which he will appraise such property, and at such time and place to appraise the same, and to make the report thereof, in writing, to said court, together with such other facts in relation thereto, as said court may by order require, to be filed with the clerk of such court; and from this report the said court shall by order forthwith assess and fix the market value of all inheritances, devises, bequests, or other interests, and the tax to which the same is liable, and shall immediately cause notice thereof to be given, by registered mail, to all persons known to be interested therein,'' etc.   This provision is not clear and explicit; but to avoid condemning it as unconstitutional, and  thus defeating the purpose of the legislature in enacting the legislation, we must give it such a construction as will uphold it, if this can be done.   The phrase ''and to such persons,'' preceding the words ''as the court may direct,'' seems to be useless, since no person is entitled to notice unless he has an interest.   If, however, the latter phrase be read in connection with the clause ''to give such notice, by registered mail,'' etc.,

the provision is made clear.    Thus read, it means that the appraiser shall give such notice by registered mail to all persons known to have a claim or interest in the property, as the court may direct, of the time and place, etc.    This must be the sense in which the legislature intended the provision to be understood, else the word ''such,'' qualifying the word ''notice,'' has no intelligible reference.    So construed, the provision lays upon the court the duty to fix the time for the appraisement, within such reasonable limits as will give every person interested the opportunity to be present and have a hearing, if he so desires.    It may be difficult, in a given case, for the court to ascertain the names and postoffice addresses of all of the persons interested; but this must be done by the court in Silver Bow county or by the court in Ireland, and the task is no more difficult for one than the other.    If the inconvenience and difficulty encountered in this regard is to determine the power of the court to proceed, then there would often arise cases in which the court would be at a loss as to what disposition it should make of a distributive share. The court admitted the will to probate.    It may be presumed that it has knowledge or the means of knowledge of all persons interested in the property disposed of by it, and can impart this knowledge to the appraiser in its direction to him as to the time which must intervene before the appraisement is made.    It is further provided that, after the tax has been assessed, the court shall ''immediately cause notice thereof to be given by registered mail to all persons known to be interested therein.''    Thus an additional notice is provided for, which requires knowledge in the court of the names and whereabouts of all interested persons.    There is implied by this requirement, also, the right in any or all of the persons interested to be heard; for the proceeding is before the court or judge, and any person interested, if he demands it, must be accorded a hearing.

Section 7741 further provides for the issuance of a citation to any person interested, when any tax accruing under this statute is due, but has not been paid, to show cause why it should not be paid.    The service of the citation, and the time, manner and

proof of it, and the hearing and determination under it, together with the manner of enforcing the determination, must conform to the provisions of the Code of Civil Procedure applying to other citations issued during probate proceedings. A hearing is provided for, and any legal cause may be assigned as a reason why the tax should not be paid. The action of the court in fixing the amount of the tax and directing its payment may also be reviewed on appeal, either from the order itself or from the decree directing the delivery. (Revised Codes, sec. 7098; *In re Tuohy's Estate, supra.*)

Our statute is modeled after the statute enacted by the legislature of the state of New York in 1885. The New York statute did not provide for the payment of an inheritance tax upon the property of nonresident decedents found in that state. (*In re Enston's Estate,* 113 N. Y. 174, 21 N. E. 87, 3 L. R. A. 464.) The provisions contained in it for the giving of notice were substantially identical with those contained in our own statute. They were examined by the appellate court of New York in *In the Matter of McPherson,* 104 N. Y. 306, 58 Am. Rep. 502, 10 N. E. 685. After a review of them all, the court reached the conclusion that the provisions for notice were amply sufficient to accord every person interested due process of law.

There is no question made here as to the sufficiency of the notice which the district court required the appraiser to give. We are of opinion that the double notice provided for in section 7738, the citation for which provision is made in section 7741, and the provision for an appeal, are sufficient, provided only the court or judge in fixing the time in the notice so fixes it as to give a reasonable opportunity to those interested to be heard. In doing this, the court will doubtless be guided by the analogies of the statutes fixing the time for appearance after publication of summons, or those providing for notice in other cases. (Revised Codes, secs. 6520, 7148.)

In the disposition of this application we have not noticed the question whether *certiorari* or prohibition is the proper remedy;

but have directed our attention to the merits of the questions presented.

The motion to quash is sustained, and the proceeding is dismissed.

*Dismissed.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.