STATE EX REL. GILMORE, RELATOR, v. DISTRICT COURT
ET AL., RESPONDENTS.

(No. 3,147.)

(Submitted March 23, 1912.   Decided April 1, 1912.)

[122 Pac. 922.]

*Inheritance Taxes—Nature of Imposition—Basis of Computation—Certiorari.*

Inheritance Taxes—Nature of Imposition.
   1.   An inheritance tax is not an imposition upon property, but a duty levied by the state upon the right to receive property by testamentary disposition or under the intestate laws, or by a deed or instrument which is to take effect at or after the death of the testator.
Same—Basis of Computation.
   2.   Section 7724, Revised Codes, relating to inheritance taxes, provides that an estate valued at less than $7,500 shall not be subject to such a tax where the estate shall pass, *inter alia*, to brothers and sisters. The clear value of an estate was $10,772.27, distributable among decedent's four brothers and sisters, and the court ordered the administrator to pay a tax at the rate of one dollar per hundred upon that amount. *Held*, on *certiorari*, that the order was proper, since the basis for computation of the tax is the clear value of the whole estate, and not that of each individual legacy or distributive share, as contended by relator.

Original application by H. N. Gilmore, as administrator of the estate of Samuel Gilmore, deceased, for *certiorari* to the District Court of Custer County to review an order fixing the amount of an inheritance tax. Affirmed.

Cause submitted on brief of counsel for relator.

*Mr. Herbert A. de Lima,* for Relator; *Mr. George F. Farr,* of Counsel.

*Mr. Albert J. Galen,* Attorney General, for Respondents.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

*Certiorari* to the district court of Custer county. Samuel Gilmore died intestate in Custer county on August 18, 1904. His entire estate, as appraised, was of the value of $43,664.72. Of this $20,302.22 consisted of personal property. After the payment of the debts of the decedent and expenses of administration there remained personalty consisting of cash and property of the clear value of $10,772.27, distributable among the four surviving brothers and sisters of the decedent. On May 29, 1911, the estate being ready for distribution, upon application by the administrator for an order fixing the amount of the inheritance tax, if any, to be paid by him, the district court held that the real estate was not subject to any tax, but that the personal property was subject to a tax at the rate of $1 per hundred, and ordered the administrator to pay to the treasurer of Custer county $107.72, the amount so found to be due upon the balance to be distributed, with interest thereon from the date of the death of the decedent until the date of payment. The administrator being advised that since the law imposes the tax upon the distributive shares, and not upon the gross amount of the personal estate, and since each of the shares is less in amount than $7,500, the tax was improperly imposed, and instituted this proceeding to have the order annulled.

There is thus presented the single question whether the payment exacted by the statute is to be computed upon the clear value of the estate to be distributed, or upon the distributive shares or legacies, as the case may be. In other words, the question is, whether the exemption of $7,500 is to be construed as referring to the distributive shares instead of the clear value of the estate. If the contention of counsel for relator is maintainable, the tax in question was improperly imposed, and the order must be set aside. To determine this question, it becomes necessary to examine the portion of the statute making the imposition and to ascertain the purpose which the legislature intended to accomplish by its enactment. The portion of it which it is necessary to construe is the following:

"Sec. 1. After the passage of this Act, all property which shall pass by will or by the intestate laws of this state, from any person who may die, seised or possessed of the same, while a resident of this state, or if such decedent was not a resident of this state, at the time of his death, which property, or any part thereof, shall be within this state, or any interest therein or income therefrom, which shall be transferred by deed, grant, sale or gift made in contemplation of the death of the grantor or bargainor, or intended to take effect in possession or enjoyment after such death to any person or persons, or to any body politic, corporate, in trust or otherwise, or any property, which shall be in this state or the proceeds of all property outside of this state, which may come into this state, and which may be or should be distributed in this state to any such heirs, devisees or legatees, by reason whereof any person or corporation shall become beneficially entitled in possession or expectancy, to any such property, or to the income thereof, other than to or for the use of his or her father, mother, husband, wife, lawful issue, brother, sister, the wife or widow of the son or the husband of a daughter, or any child or children adopted as such in conformity with the laws of the state of Montana, and any lineal descendant of such decedent born in lawful wedlock, shall be and is subject to a tax of five dollars on every hundred dollars

45 Mont.—22

of the market value of such property, and at a proportionate rate for any less amount, to be paid to the treasurer of the proper county hereinafter defined for the use of said county and state in the proportions hereafter stated; and all administrators, executors and trustees shall be liable for any and all such taxes until the same have been paid as hereinafter directed. When the beneficial interests to any personal property or income therefrom shall pass to or for the use of any father, mother, husband, wife, child, brother, sister, wife or widow of the son, or the husband of a daughter, or any child or children adopted as such in conformity with the laws of the state of Montana, or to any person to whom the deceased, for not less than ten years prior to death, stood in mutually acknowledged relation of a parent, or to any lineal descendant born in lawful wedlock; in every such case the rate of tax shall be one dollar on every hundred dollars of the clear market value of such property, and at and after the same rate for every less amount, provided that an estate which may be valued at a less sum than seventy-five hundred dollars shall not be subject to any such tax or duty. In all other cases the rate shall be five dollars on each and every hundred dollars of the clear market value of all property and at the same rate for any amount, provided that an estate which may be valued at a less sum than five hundred dollars shall not be subject to any such duties or tax; provided, further, that said tax shall be levied and collected upon the increase of all property arising between the date of death and the date of the decree of distribution, and upon all estates which have been probated before, and shall be distributed after the passage and taking effect of this Act.'' (Sess. Laws 1897, p. 83; Rev. Codes, sec. 7724.)

Although this provision has several times been examined upon questions touching its validity on constitutional grounds and to ascertain its meaning in other particulars, the question now before us is entirely new. The nature of the imposition was considered in *Gelsthorpe* v. *Furnell,* 20 Mont. 299, 39 L. R. A. 170, 51 Pac. 267. The conclusion was reached that it is not a

[1]   tax upon property, but a duty imposed by the state upon the right to receive property by testamentary disposition or succession, or by any deed or instrument to take effect at or after the death of the testator.   That such is the nature of the imposition has been assumed or affirmed by later decisions. (*Hinds* v. *Wilcox,* 22 Mont. 4, 55 Pac. 355; *In re Tuohy's Estate,* 35 Mont. 431, 90 Pac. 170; *State ex rel. Floyd* v. *District Court,* 41 Mont. 357, 109 Pac. 438.)   The last case is supposed by some of the district judges to be in conflict with the earlier decisions, in that it seems to hold that the imposition is upon the right to make disposition rather than upon the right to receive or take; but that this notion is erroneous is apparent when attention is given to the questions which were considered and decided.   It was conceded by counsel for relator that the tax in question in that case was properly imposed if the statute applies to estates of nonresidents.   The questions involved were: (1) In ancillary administration proceedings in this state must distribution be made by the state court, or must the ancillary administrator or executor deliver the whole of the estate to the foreign executor?   And (2) whether the statute provides a means by which the tax may be ascertained and collected.   It is true that remarks made during the discussion of the first question indicate an opinion that the imposition is upon the interest of the testator, intestate, or grantor, and not upon the legacies or distributive shares; but there is nothing said indicating a change of the court's views as to the nature of the imposition as stated in previous decisions, or the basis upon which the tax must be computed.   In none of the previous decisions was the question now under consideration involved.

The statute is ambiguous in many of its expressions.   It is difficult to ascertain what the legislature intended to designate as the basis of computation.   That it was intended to be a revenue measure is clear, not only from the fact that it was enacted at a time when there was need for additional public revenue, but also from the fact that the collections made under it are devoted generally to the support of the state and county gov-

ernments. Such a construction must, therefore, be given it as will render it, so far as may be, effective for this purpose; and since all property, with the exceptions mentioned, is made subject to the tax, the rule is to be observed that all estates received by testamentary disposition or under the law of succession are subject to the imposition, except so far as they are specifically exempted.

In the construction of such statutes the question has generally been, as here, whether the exemptions made refer to the estate of the decedent or to the share of the legatee or distributee. Our statute is modeled after the law of New York [2] enacted in 1885 (Laws 1885, Chap. 483). (*State ex rel. Floyd v. District Court, supra.*) The court of last resort of that state, in considering the words "estate" and "property," used in the same connection as they are used in our own Act, construed them as referring to specific legacies or distributive shares, and not the whole estate, unless the whole descended to collaterals. (*In re Cager,* 111 N. Y. 343, 18 N. E. 866; *In the Matter of Howe,* 112 N. Y. 100, 2 L. R. A. 825, 19 N. E. 513.) In the latter case it was said with reference to a limitation of $500, where our statute fixes it at $7,500: "We think that applies to the portion of the property passing to the legatee or devisee, and not to the whole estate left by the testatrix. The tax is not imposed upon the estate of which she was seised or possessed, but only upon so much of it as passes to certain persons, not all persons or any person; and, although the executor is required to pay the tax, he is to deduct it from the particular legacy, and cannot 'deliver or be compelled to deliver any specific legacy or property subject to tax to any person until he shall have collected the tax thereon.'" In a revision of this Act and later amendatory provisions in 1892, by what is known as the "Transfer Tax Act" (Laws 1892, Chap. 399), the legislature added a section declaring that the words "estate" and "property," as used in the revision, should be taken to mean the "property or interest of the testator, intestate, grantor, bargainor or vendor passing or transferred, * * * and not as

the property or interest therein passing or transferred to individual legatees, devisees, heirs, next of kin, grantees, donees or vendees''—thus showing a purpose to obviate the interpretation given to these terms by the court in the cases cited. This indicates, persuasively at least, that it was the purpose of the legislature when it formulated the Act that these terms should be given the meaning assigned to them in the later Act. In any event, the appellate court in construing the new enactment held that, while the theory of the tax theretofore defined as an imposition upon the right to take or receive by testamentary disposition or succession remained unchanged by the later legislation, the whole estate disposed of must be made the basis of computation, instead of the share of the legatee or distributee. (*Matter of Hoffman,* 143 N. Y. 327, 38 N. E. 311.)

The statute of 1887 (P. L. 79) of Pennsylvania is very similar to the New York statute of 1885, and hence to our own. In the general designation of the subjects to which the Act applies, it employs the expression "all estates of every kind passing from any person by will," *etc.,* whereas our Act uses the expression, "all property which shall pass by will," *etc.* The clause providing for the exemption except in the amount named is the same as that employed in our own statute. In the case of *Howell's Estate,* 147 Pa. 164, 23 Atl. 403, it was contended that the expression "all estates" referred to legacies and distributive shares, and not to the clear value of the estate of the decedent. The court refused to sustain the contention and held that the liability for the tax was to be ascertained, not by the amount of the legacy or distributive share, but by the clear value of the estate passing to the persons or bodies corporate not exempt from taxation. The term "estate" is not in popular parlance more comprehensive in meaning than the term, "property." As used in our statute, the two seem to be synonymous, and so the Pennsylvania court held in the case cited.

There are many ambiguities found in the different sections of the Act. Some of the expressions employed sustain the earlier view of the court of New York, and others the con-

trary view. For illustration: In section 1 an exemption is made of estates which may be valued at a less sum than $500. So, also, the increase in the value of all property is made subject to the tax. So are made subject to it all estates which have been probated before, and shall be distributed after, the passage and taking effect of the Act. In section 3, when a bequest or devise is made to the executor or trustee, in lieu of commissions and allowances, or he is made residuary legatee, the bequest or devise is subject to the tax if it exceeds a reasonable compensation. By section 4 the tax is due and payable at the date of the death of the decedent. Section 6 requires the executor, administrator, or trustee having in charge a legacy or trust to deduct the tax from it or collect it from the legatee or person entitled. Under section 7 the executor, administrator, or trustee has power to sell property of the decedent to obtain funds to pay the tax. These provisions are sufficient for illustrative purposes.

In view of the manifest purpose of the legislation, we think the terms "property" and "estate," as used in the section, *supra,* should be assigned the meaning given them by the legislature of New York and by the Pennsylvania court, and that the uncertainties and ambiguities found in the sections of the Act providing the means of administration should be so resolved as to harmonize them with this purpose. Otherwise, as a revenue measure, the legislation would fail in effective accomplishment because the tax could in almost all cases be entirely averted.

We are aware that other courts have reached a different conclusion upon similar statutes (*People* v. *Koenig,* 37 Colo. 283, 11 Ann. Cas. 140, 85 Pac. 1129; *Knowlton* v. *Moore,* 178 U. S. 41, 44 L. Ed. 969, 20 Sup. Ct. Rep. 747); but the view which we have adopted seems to be more in harmony with the policy of the enactments. We apprehend that no difficulty will be encountered in computing the tax. It was said in *State ex rel. Floyd* v. *District Court, supra:* "It may be that, when the time comes to fix the amount to be paid, a part of it will have to

be fixed at one rate and a part at another, according as the relationship of the legatees to the testator is made to appear. Such a proportion of the amount as will go to the favored class, if any of the legatees fall within that class, will be subject to the tax at the lower rate and the rest at the higher rate; but these proportions will be easily ascertainable when the facts appear.'' This view leaves the tax still a duty upon the privilege of taking or receiving, but at the same time it renders the legislation effective for the purpose for which it was enacted.

The order of the district court is affirmed.

*Affirmed.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.